UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

NANCY JONES, individually, and on behalf of all others similarly situated,

           Plaintiff,

    v.

DAYTONA BR-GD, INC., a Florida corporation,

           Defendant.

NO.

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

       Plaintiff Nancy Jones ("Plaintiff Jones" or "Jones") brings this Class Action Complaint and Demand for Jury Trial against Defendant Daytona BR-GD, Inc., d/b/a Daytona Toyota ("Defendant" or "Daytona Toyota") to stop Daytona Toyota from directing its agents to violate the Telephone Consumer Protection Act by making multiple telemarketing calls to phone numbers that are registered on the National Do Not Call registry ("DNC") where the consumer asked for the calls to be stopped, and to otherwise obtain injunctive and monetary relief for all persons injured by Daytona Toyota's conduct. Plaintiff Jones, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

       1.     Plaintiff Nancy Jones is a resident of Daytona Beach, Florida.

       2.     Defendant Daytona Toyota is a Florida registered corporation headquartered in Daytona Beach, Florida.  Defendant conducts business throughout this District.

## JURISDICTION AND VENUE

       3.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.      This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant operates its dealership in this District, does business in this District, and the wrongful conduct giving rise to this case arose from that business and was directed to Plaintiff while she was residing in this District.

## INTRODUCTION

5.      As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.      The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2).

7.      A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

8.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9.      By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

2

11.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12.     According to online robocall tracking service "YouMail," 3.3 billion robocalls were placed in June 2020 alone, at a rate of 111.2 million per day. www.robocallindex.com (last visited July 28, 2020).

13.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

14.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

15.     Daytona BR-GD, LLC does business using the d/b/a Daytona Toyota Group.[3]

16.     Daytona Toyota is a car dealership that sells new and used vehicles and provides car servicing, parts and accessories to consumers.[4]

17.     As part of its business practice, Daytona Toyota places solicitation calls to past consumers in order to solicit them to purchase new vehicles from their dealership.

18.     Daytona Toyota places these calls to consumers, despite the fact that they are calling consumers they no longer have an established business relationship with and do not

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.brightscope.com/401k-rating/301060/Daytona-Br-Gd-Inc-Dba-Daytona-Toyota/305525/Daytona-Br-Gd-Inc-401K-Profit-Sharing-Plan/
[4] https://www.daytonatoyota.com/aboutus.aspx

otherwise have written consent to call, some of whom are registered on the national do not call registry.

19.     Furthermore, Defendant lacks a sufficient stop call system that results in Defendant continuing to call consumers who have requested that the calls stop.

20.     For example, in Plaintiff Jones's case, Daytona Toyota placed at least 14 unsolicited calls to Plaintiff despite the Plaintiff repeatedly requesting for the calls to stop, and despite the fact that Jones registered her phone number on the DNC to avoid receiving such calls.

21.     There are numerous complaints posted online about unsolicited calls that consumers received from Daytona Toyota. This is a small sample of those complaints:

- "Be careful if you go here for service. Once you do you will get a sales call every month or so with someone trying to get you to come in and trade it in. I have a Toyota Camery that is company car and I have asked several times that they do not call me about trading it in because I do not own it. I have watched them put notes on my account but no one takes the time to read them. Just today a sales guy named John Ritzell ( not sure of the spelling) called me when the same song and dance. I asked if he had reviewed my service record and he had not. So if you do not want annoying sales calls than stay away from this place."[5]
- "Call almost weekly"[6]
- "Silent call"[7]
- "Unsolicited call"[8]
- "not interested"[9]
- "keep calling pretending they are trying to reach a certain individual and advertising a great deal on different Toyotas."[10]
- "selling cars"[11]
- "Jimmy Wilkes at Daytona Toyota"[12]

---

[5] https://www.google.com/search?q=%22daytona+toyota%22&oq=%22daytona+toyota%22
[6] https://www.shouldianswer.com/phone-number/3862557475
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*

22.     In response to these calls, Plaintiff Jones files this lawsuit seeking injunctive relief requiring Defendant to cease from violating the Telephone Consumer Protection Act by, among other things placing unsolicited calls to consumers' telephone numbers that are registered on the DNC after consumers have requested Defendant stop calling, as well as an award of statutory damages to the members of the Classes and costs.

**PLAINTIFF JONES'S ALLEGATIONS**

23.     Plaintiff Jones registered her phone number on the DNC on September 14, 2019.

24.     Plaintiff Jones' phone is not associated with a business and is used for personal use only.

25.     In mid-2018, Plaintiff Jones purchased a vehicle from Daytona Toyota.

26.     In early 2019, Plaintiff Jones received a solicitation phone call from Daytona Toyota. During this call, Plaintiff Jones specifically requested that Daytona Toyota stop calling her.

27.     Despite requesting that the calls stop, Plaintiff Jones began receiving additional calls from Daytona Toyota in 2019, a year after she purchased her vehicle.

28.     Again, Plaintiff asked for the calls to stop, but the calls continued over a series of months.

29.     In approximately July of 2020, Plaintiff Jones received more solicitation calls from Daytona Toyota agents.

30.     Daytona Toyota was calling her to solicit her to trade in her car and purchase a new car from Daytona Toyota.

31.     Daytona Toyota had no consent to place solicitation calls to Plaintiff since she had requested that the calls stop.

32.     Plaintiff answered a call in July of 2020 and spoke with a salesperson, specifically asking for the calls to stop.

33.     The salesperson explained that Jones' phone number is also her customer number, so there is no way to stop the calls.

34.     Frustrated by this response, Plaintiff Jones visited Daytona Toyota in-person several times to ask for the calls to stop.

35.     Despite her requests for the calls to stop, the calls from Defendant continued.

36.     Plaintiff returned to Daytona Toyota again and spoke with the dealership owner who assured Plaintiff that the calls would be stopped.

37.     Again, despite this effort, the calls continued.

38.     In fact, Plaintiff has received continuous unsolicited calls as recently as September, 2020.

39.     Between September 12 and September 14, Plaintiff received 2 unsolicited calls from Daytona Toyota to her phone number.

40.     Defendant's agent left a voicemail message telling Plaintiff that she could trade-in her existing car and buy a new car for the same monthly price she was already paying.

41.     On September 28, 2020 at 1:09 PM, Plaintiff received yet another call from a Daytona Toyota salesperson using phone number 386-255-7475.

42.     When Plaintiff answered the call, a salesperson began a sales pitch for Plaintiff to trade in her vehicle in place of a new one.

43.     Plaintiff told the salesperson that she has asked many times for the calls to stop and then hung-up the phone.

44.     Plaintiff received calls to her phone from Daytona Toyota using phone number 386-255-7475, as well as the individual phone numbers of Daytona Toyota sales agents.

45.     386-255-7475 is a phone number that is associated with Daytona Toyota.

46.     The unauthorized solicitation telephone calls that Plaintiff received from Daytona Toyota, as alleged herein, have harmed Plaintiff Jones in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phones.

47.    The calls also wasted Plaintiff's time, as, among other things, Plaintiff traveled in-person to Daytona Toyota to ask for the calls to stop.

48.    Seeking redress for these injuries, Plaintiff Jones, on behalf of herself and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited and other telemarketing calls.

**CLASS ALLEGATIONS**

49.    Plaintiff Jones brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **Do Not Call Stop Class**: All persons in the United States who from four years prior to the filing of this action: (1) Defendant (or an agent acting on behalf of Defendant) called more than one time on his/her residential telephone number, (2) within any 12-month period, (3) at least thirty days after they told Defendant to stop calling.

> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called more than one time (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff.

50.    The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Jones anticipates the need to amend the Class definitions following appropriate discovery.

51.    **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

52.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Jones and the Classes, and those questions predominate over

any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    whether Defendant's calls to Plaintiff and other consumers were made for telemarketing purposes;

    (b)    whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

    (c)    whether Defendant continued to call consumers after they requested that the calls stop;

    (c)    whether Defendant's conduct constitutes a violation of the TCPA;

    (d)    whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

53.    **Adequate Representation**: Plaintiff Jones will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in class actions. Plaintiff Jones has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff Jones and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Jones nor her counsel have any interest adverse to the Classes.

54.    **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Jones. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of

the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Registry Stop Class)**

55. Plaintiff Jones repeats and realleges paragraphs 1 through 54 of this Complaint and incorporates them by reference.

56. Defendants violated 47 C.F.R. §64.1200 by initiating calls for telemarketing purposes to telephone subscribers such as Plaintiff and the Do Not Call Registry Stop Class who specifically informed Defendant and/or its agents to stop calling them, and who received two or more additional calls within a 12-month period at least thirty (30) days after informing Defendant and/or its agents to stop calling them.

57. As a result of Defendant's unlawful conduct, Plaintiff and the Do Not Call Registry Stop Class suffered actual damages and, under section 47 U.S.C. § 227(c), Plaintiff and each member of the Do Not Call Registry Stop Class is each entitled to between $500 and $1,500 per violation.

## SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Internal Do Not Registry Class)**

58. Plaintiff Jones repeats and realleges paragraphs 1 through 54 of this Complaint and incorporates them by reference.

59. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the

following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

60.     Defendant or its agent made marketing calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

61.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

62.     Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jones individually and on behalf of the Classes, prays for the following relief:

63.     An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Jones as the representative of the Classes; and appointing his attorneys as Class Counsel;

64.     An award of actual and/or statutory damages and costs;

65.     An order declaring that Defendant's actions, as set out above, violate the TCPA;

66.     An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

67.     Such further and other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff Jones requests a jury trial.

DATED this 13th day of October, 2020.

By: /s/ Stefan Coleman

Stefan Coleman (FL Bar No. 30188)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman (FL Bar No. 84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*